BOUTALL, Judge.
This is an appeal from an adverse judgment against the plaintiff in reconvention, Henry C. Jolet, Jr. The National Bank of Commerce had financed the purchase of a Volkswagen bus by the defendant, and, claiming default on the note, sued Jolet for a money judgment, also asking for a writ of sequestration. Defendant Jolet filed an answer setting up payment of the note as a special defense. The trial dourt ordered the vehicle sold at public auction with the Civil Sheriff to retain the proceeds pending further orders of the court. The defendant then filed a reconventional demand, alleging that he had paid the note and that the Bank’s seizure was illegal. He itemized damages in the amount of $7254.32 for loss of the vehicle, loss of work for lack of transportation, humiliation, em *432 barrassment, inconvenience, ' and legal expenses. He asked for a money judgment for these alleged damages. At the trial, the Bank announced it had no further interest in the main demand but would only defend the reconventional demand. After a hearing on the merits, the trial judge dismissed the reconventional demand, holding that Jolet had not proved his case and that the Bank was justified in seizing the vehicle. This appeal followed.
The facts of the case are complex and somewhat strange, but simply put, only a question of the credibility of witnesses is involved. The trial judge resolved this issue in favor of the Bank, and, finding no manifest error, we affirm.
The record discloses that in November, 1965, the Bank bought from a local dealer a Chattel Mortgage Note for $2254.32 executed by Henry C. Jolet, Jr., and secured by the mortgage on a Volkswagen bus. This loan account was given a number, and a coupon payment book with the corect account number appearing on its face was sent to Jolet. However, when the Bank programmed its computer for this loan, a different and incorrect account number was assigned to this loan. The loan account was numbered Y-10-A-19324, and the computer assigned number Y-10-A-10324. Thereafter, Jolet made his first payment with a check furnished to him by his sister-in-law, because Jolet had no checking account. The first coupon from the account book was presented with the check at the time of payment. Shortly thereafter, the computer rejected the payment as “impossible” because there was no such account number as far as the computer was concerned. To correct the error in the computer brought about by the mix-up in account numbers, the computer was programmed to show that the erroneous account number had been paid in full. However, after this was done, a Bank officer, believing that the account had really been paid in full, since the computer told him so, stamped the mortgage note on its face “Paid” and began the routine of returning various documents to Jolet. In January, 1966, the Bank sent Jolet a check for $377.12, representing an unearned interest rebate. This check was sent out under the incorrect account number. In February 1966 the Bank sent Jolet the chattel mortgage note marked “Paid”, his copy of the chattel mortgage, and his title showing the mortgage to be satisfied. Again, this was done under the incorrect account number. We note an apparent unexplained alteration in the number on two documents possessed by Jolet.
In the meantime, all was not quiet on the Jolet domestic front. Mrs. Jolet did not want her husband to buy the bus and refused his request for $500.00 cash for the down payment. Mrs. Jolet had charge of the financial affairs of the home and had saved the $500.00 which she kept in a strong box in their home. Jolet testified that his union had given him the job of picking up some fellow workers and delivering them to work for a stipulated fee, and he needed the bus for this job. Despite his wife’s objections, he raided the strong box without her knowledge, took the cash, and used it for the down payment on the bus. She was infuriated with her husband when he brought the bus home but appears to have calmed down enough to discover the coupon payment book hidden in a drawer along with her husband’s socks. She testified that, thinking that her husband’s account was delinquent at the bank, she paid the January and February payments at the Bank which took the payments without investigation. She neglected to tell her husband about these payments.
Jolet testified that he made the first payment on December 11, 1965 and between that date and December 23, 1965 he won $2700.00 gambling at dice and cards and on horse races. With these winnings in hand, he went to the Bank on December 23, 1965, and paid in cash the balance due on his note. He insists that he went to a teller on the main floor of the Bank and made this last payment to her. When the Bank *433 later requested him to come to the Bank and identify the teller that he paid, Jolet refused because the Bank would not pay him a day’s wages which he would lose by taking the day off.
The record' discloses that any monthly installment could be paid at the main office or any of the branches of the Bank but that a payment in full, particularly if it were a cash payment could be paid only at the personal loan department of the Bank at the main office on the second floor. This policy was in effect because all the records were on the second floor and there interest and insurance rebates could be figured and all the necessary paper work to close out the transaction could he completed. Tellers on the first floor at the main office or branches were not authorized to take a final payment in full.
Jolet testified that he did not tell his wife that he had paid the loan in full, and she did not tell him that she had made the January and February, 1966 payments. When the rebate check of $377.12 was mailed to her husband in January, 1966, she did not wait to ask her husband what it was all about, but rushed to the Bank with the check, and consulted with one of the officers about the disposition of the check. This official could not enlighten her and she left the check with him pending further information. Thereafter this check disappears from contention and the record does not disclose its ultimate disposition. That night Mrs. Jolet told her husband about this check and the events thereafter and Jolet offered no explanation or comment. When Jolet received the note and the title in the mail from the Bank, he told his wife for the first time that he had paid the note in full in December, 1965.
In passing, we should note that the Bank introduced into evidence to attack Jolet’s credibility information showing that Jolet had been arrested at various times and in various places for theft, robbery, burglary, and forgery and had actually served time in the Louisiana State Penitentiary.
From this maze of errors, confusion, contradictory testimony, and what not, we can only conclude that the trial judge was correct in holding that the plaintiff in reconvention did not carry the burden of his case. Giving him the benefit of all doubt, we cannot say that Jolet’s story is of that caliber that would lead us to a reversal of the trial judge. While it is true that the Bank handled this account with a minimal amount of efficiency and offered no documentary evidence to support its claim of human and computer error, nevertheless we feel that the plaintiff in reconvention has offered a story that is unlikely and improbable. There is no probable way of tracing the source of his winnings while he was gambling, i.e., informal card and dice games with friends and fellow workers, nor is it likely that his “bookie”, even if found, could or would substantiate his race horse winnings. His personal income tax records would be of no help since Jolet testified that he did not report his winnings to either the federal or state governments. He did not produce a receipt from the Bank showing his final lump sum payment even though the record is clear that the Bank would not send him the documentary evidence showing payment of the note until some time later. In addition, Jolet did not take his coupon payment hook with him although he claims he was paying the loan out in full. He insists that he made the final payment to a teller on the first floor but the Bank’s policy in this situation rules out the possibility of a final cash payment to a teller.
We are familiar with the line of cases which say that the surrender of a note by the payee to the maker raises a presumption of payment and the burden of proof lies with the payee to show that the note has not been paid. See Hughes v. Hughes, 170 So.2d 251 (La.App. 4th Cir.( 1964) and the cases therein cited. We do not think that the present case falls within the holding of those cases for the reason that this is a suit for damages in which a plaintiff in reconvention asks for a money *434 judgment because he had paid m full a note which was secured by the property wrongfully seized and sold. If this plaintiff in reconvention alleges payment as a pre-requisite to damages, he certainly has the burden of proof to show payment and this burden has not been carried. In view of the incredible testimony by Jolet, together with the lack of any supporting evidence whatsoever, the trial judge had no choice but to dismiss the reconventional demand.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.